

**FILED**
November 10, 2022 03:52 PM
ST-2021-CR-00380
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| PEOPLE OF THE VIRGIN ISLANDS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. ST-21-CR-380 |
| ) | |
| MICAIAH COZIER, ) | |
| ) | |
| Defendant. ) | Cite as: 2022 V.I. Super 94U |
| ) | |

**ANNA B. SCOTT, Esq.**
ASSISTANT ATTORNEY GENERAL
Department of Justice
34-38 Kronprindsens Gade
GERS Building, 2nd Floor
St. Thomas, V.I. 00802
Attorney for the People of the Virgin Islands

**NICOLE-LYNN KING-RICHARDSON, Esq.**
KING & KING LAW P.C.
5043 Norre Gade, Suite 201
St. Thomas, V.I. 00802
Attorney for Defendant Micaiah Cozier

**CARTY, RENÉE GUMBS**, Judge

## MEMORANDUM OPINION

¶1.     **THIS MATTER** is before the Court on the "Motion to Dismiss" filed on March 22, 2022, by Defendant, Micaiah Cozier ("Cozier"), pursuant to Virgin Islands Rules of Criminal Procedure 12(b)(3)(B)(ii) and 47. Defendant moves this Court to dismiss eleven counts: two (2), four (4), six (6), eight (8), ten (10), twelve (12), fourteen (14), sixteen (16), eighteen (18), twenty (20), and twenty-two (22) or in the alternative, to consolidate the counts into one charge. The People of the Virgin Islands ("the People") filed their Opposition on March 29, 2022. For the reasons that follow, Defendant's motion will be granted in part and denied in part.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

¶2.     The People allege that on the morning of December 4, 2021, a black Honda Odyssey van entered Havensight Shopping Center, St. Thomas, Virgin Islands, and parked across Glitters jewelry

store with the vehicle angled to face the exit. At approximately 11:00 a.m., three (3) men wearing all black and masks exited the van and ran into the jewelry store. Two (2) of the men carried guns and one (1) carried an empty bag. One of the patrons attempted to leave but was dragged back into the store against her will by one of the gunmen. The men stole approximately eighteen thousand dollars ($18,000) worth of jewelry, including a "gold byzantine necklace" and "Gucci earrings." Seconds later, the three males vacated the store and ran into the van. Before entering the van, one of the gunmen turned and discharged several rounds in the storefront's direction. The security officer was shot in the abdomen and taken to Roy Lester Schneider Hospital. Gregorianna Julien who was pulled back into the store moments earlier by a gunman, was shot in the shoulder, and subsequently passed away on January 2, 2022.

¶3.    Virgin Islands police officers were immediately dispatched to Glitters jewelry store where, upon arrival, they interviewed witnesses and collected multiple spent castings as part of their investigation. On December 15, 2021, officers interviewed a witness who claimed he observed four men and identified three of the four men by familiarity and clothing description, including the Defendant. On December 16, 2021, Cozier was brought in for questioning, however, he denied any association with the robbery. Nevertheless, the officers advised Defendant of his constitutional rights, arrested him, and remanded him to the Bureau of Corrections.

¶4.    On February 2, 2022, the People formally charged Cozier with twenty-eight counts in the Information:

i.    Count One - Murder in the First Degree (Aiding and Abetting), tit. 14 V.I.C. §§ 921, 922(a)(2); § 11(a);

ii.    Count Two - Use of a Firearm During the Commission of Murder in the First Degree (Aiding and Abetting), tit. 14 V.I.C. § 2253(a); § 11(a);

iii.  Count Three - Assault in the First Degree (Aiding and Abetting), tit. 14 V.I.C. § 295(3), § 11(a);

iv.  Count Four - Use of a Firearm During the Commission of Assault in the First Degree (Aiding and Abetting), tit. 14 V.I.C. § 2253(a); § 11(a);

v.  Count Five – Assault in the Third Degree (Aiding and Abetting), tit. 14 V.I.C. § 297(1)(2)(4); § 11(a);

vi.  Count Six - Use of a Firearm During the Commission of Assault in the Third Degree (Aiding and Abetting), tit. 14 V.I.C. § 2253(a); § 11(a);

vii.  Count Seven - Attempted Murder in the First Degree (Aiding and Abetting), tit.14 V.I.C. §§ 921, 922(a)(2); § 331; § 11(a);

viii.  Count Eight - Use of Firearm During the Commission of Attempted Murder in the First Degree (Aiding and Abetting), tit. 14 V.I.C. § 2253(a); § 11(a);

ix.  Count Nine – Assault in the First Degree (Aiding and Abetting), tit. 14 V.I.C. § 295(3); § 11(a);

x.  Count Ten - Use of a Firearm During the Commission of Assault in the First Degree (Aiding and Abetting), tit. 14 V.I.C. § 2253(a); § 11(a);

xi.  Count Eleven – Assault in the Third Degree (Aiding and Abetting), tit. 14 V.I.C. § 297(1)(2)(4); § 11(a);

xii.  Count Twelve - Use of a Firearm During the Commission of Assault in the Third Degree (Aiding and Abetting), tit. 14 V.I.C. § 2253(a); § 11(a);

xiii.  Count Thirteen – Kidnapping for the Purpose of Robbery (Aiding and Abetting), tit. 14 V.I.C. § 1052(a); § 11(a);

xiv.  Count Fourteen - Use of a Firearm During the Commission of Kidnapping for the Purpose of Robbery (Aiding and Abetting), tit. 14 V.I.C. § 2253(a); § 11(a);

xv.  Count Fifteen - Robbery in the First Degree (Aiding and Abetting), tit. 14 V.I.C. §§ 1861, 1862(1)(2); § 11(a);

xvi.  Count Sixteen – Use of a Firearm During the Commission of Robbery in the First Degree (Aiding and Abetting), tit. 14 V.I.C. § 2253(a); § 11(a);

xvii.  Count Seventeen - Robbery in the Second Degree (Aiding and Abetting), tit. 14 V.I.C. §§ 1861, 1863(1)(2); § 11(a);

3

xviii. Count Eighteen - Use of a Firearm During the Commission of Robbery in the Second Degree (Aiding and Abetting), tit. 14 V.I.C. § 2253(a); § 11(a);

xix. Count Nineteen - Unlawful Entry (Aiding and Abetting), tit. 14 V.I.C. § 445; § 11(a);

xx. Count Twenty - Use of a Firearm During the Commission of Unlawful Entry (Aiding and Abetting), tit. 14 V.I.C. § 2253(a); § 11(a);

xxi. Count Twenty-One - Grand Larceny (Jewelry) (Aiding and Abetting), tit. 14 V.I.C. §§ 1081; 1083(a)(1); § 11(a);

xxii. Count Twenty-Two - Use of a Firearm During the Commission of Grand Larceny (Aiding and Abetting), tit. 14 V.I.C. § 2253(a); § 11(a);

xxiii. Count Twenty-Three - Reckless Endangerment in the First Degree (Aiding and Abetting), tit. 14 V.I.C. § 625(a); § 11(a);

xxiv. Count Twenty-Four - Unauthorized Possession of Ammunition (.40 S&W) (Aiding and Abetting), tit. 14 V.I.C. § 2256(a)(4); § 11(a);

xxv. Count Twenty-Five – Unauthorized Possession of Ammunition (9mm) (Aiding and Abetting), tit. 14 V.I.C. § 2256(a)(4); § 11(a);

xxvi. Count Twenty-Six – Grand Larceny (Auto) (Aiding and Abetting), tit. 14 V.I.C. §§ 1081; 1083(a)(1); § 11(a);

xxvii. Count Twenty-Seven - Unauthorized Use of a Vehicle (Aiding and Abetting), tit. of 14 V.I.C. § 1382; § 11(a);

xxviii. Count Twenty-Eight – Conspiracy, tit. 14 V.I.C. § 551(1).

The other three co-defendants were also charged with twenty-eight (28) counts each of the identical information and formally joined in the above-captioned matter.[1]

¶5. In his motion, Cozier moves for the Court to dismiss counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, and 22 on the grounds that they are multiplicitous.[2] In the alternative, he seeks to consolidate these counts into a single charge of use of a firearm during the commission of a crime of violence. *Id.*

---

[1] The People filed a Motion for Joinder of Defendants on March 17, 2022, and since the filing of the Motion to Dismiss, all four cases were consolidated on September 2, 2022.

[2] Defendant's Motion to Dismiss, p. 1.

4

Cozier asserts that the People overcharged him with use of a firearm by "fail[ing] to identify that although there may be more than one statutory crime of violence involved in the single underlying criminal incident, the elements [of the firearms charges that he seeks to consolidate or dismiss] remain the same."[3] Defendant further states that irrespective of any of the crimes enumerated, he is accused of possessing only one firearm. Cozier concluded that there are no additional facts supporting an allegation that he possessed any other weapon.

¶6. In their opposition, the People contend that the charges are not multiplicitous as each charge is associated with a predicate "crime of violence" which includes different elements.[4] The People also aver that there were at least two guns involved during the commission of the crimes charged in the Information. *Id* at ¶ 9. Finally, the People argue that the Superior Court cases that the Defendant relied upon are not only non-binding, but were applied in the context of sentencing, not charging. As such, Defendant's motion to dismiss should be denied.

## II.  LEGAL STANDARD

¶7. Title 14, § 104 of the Virgin Islands Code prevents multiple punishments for an act or omission that can be charged under several different counts.[5] This rule provides:

> "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under any of such provisions, but in no case may it be punished under more than one. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

¶8. Thus, "[t]he plain language of § 104 indicates that despite the fact that an individual can be charged and found guilty of violating multiple provisions in different ways arising from a single act or omission, that individual can ultimately only be punished under one offense." *Galloway v. People*,

---

[3] Defendant's Motion to Dismiss, p. 6.
[4] People's Opposition to Defendant's Motion to Dismiss, pp. 3-4, at *3.
[5] 14 V.I.C. § 104, *see also People v. Pringle*, No. ST-2020-CR-00262, 2021 V.I. Super. 94U, at ¶ 16.

57 V.I. 693, 712 (2012) (quoting *Williams v. People*, 56 V.I. 821, 832 (V.I. 2012)); *see also Tyson v. People*, 59 V.I. 391, 428 (V. I. 2013). The Court in *United States v. Pollen*, 978 F.2d 78, 83 (3d Cir. 1992) held that "a multiplicitous indictment charges the same offense in two or more counts and may lead to multiple sentences for a single violation, a result prohibited by the Double Jeopardy Clause."

¶9.     In determining whether an indictment is multiplicitous, this Court looks to whether "separate and distinct prohibited acts" have been committed. *United States. v. Planck*, 493 F.3d 501, 503 (5th Cir. 2007). Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *United States v. Hodge,* 211 F.3d 74, 78 (3d Cir. 2000) (using the test set forth in *Blockburger* to determine whether certain offenses grew out of the same occurrence); *U.S. v. Liotard,* 817 F.2d 1074, 1077–1078 (3d Cir. 1987); *Titre v. People*, 70 V.I. 797, 803, 2019 V.I. 3 (2019); *Iannelli v. United States*, 420 U.S. 770, 785 n.17, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975) (explaining that the *Blockburger* test serves the "function of identifying congressional intent to impose separate sanctions for multiple offenses arising in the course of a single act or transaction").

¶10.    This test, however, is a rule of statutory construction, and because it serves as a means of discerning [legislative] purpose the rules should not be controlling where, for example, there is a clear indication of contrary legislative intent. *See Titre* at 803 (2019). Under *Blockburger*, a court is expressly required to consider whether the offenses all arose from a single act or omission. *Id.* However, even if a court finds that two statutes forbid the same conduct under the *Blockburger* test, the government may still endeavor to impose cumulative punishment under two statutes in the same trial if the legislature specifically authorized cumulative punishment. *Missouri v. Hunter*, 459 U.S.

6

359, 368–369, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *see also Albernaz v. United States*, 450 U.S. 333, 337, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). In other words, the *Blockburger* test examines "whether the legislature intended to make separately punishable the different types of conduct referred to in the various counts." *United States v. Stanfa*, 685 F.2d 85, 87 (3d Cir. 1982).

¶11.    With respect to legislative intent, the United States Supreme Court has noted that "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause of the Fifth Amendment [of] whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) (citing *Hunter* at 678–679). As a result, the sentencing discretion of the judicial branch is limited by the legislative branch in that courts must ensure that the punishment imposed upon a defendant does not surpass that prescribed by the legislature. *See Hunter* at 366; *see also United States v. Hodge*, 870 F.3d 184, 193–94 (3d Cir. 2017).

¶12.    The Virgin Islands firearms statute criminalizes the unauthorized possession, bearing, transporting, or carrying of a firearm. It imposes additional penalties if the defendant also commits or attempts to commit a "crime of violence." *Id*. Section 2253(a) of Title 14 of the Virgin Islands Code provides:

> "Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either, actually or constructively, openly or concealed any firearm, as defined in Title 23, section 451(f) of this code, loaded or unloaded, may be arrested without a warrant, and shall be sentenced to imprisonment of not less than ten years and shall be fined not less than $10,000 nor more than $15,000 or both the fine and imprisonment, except that ... or if such firearm or an imitation thereof was had, possessed, borne, transported or carried by or under the proximate control of such person **during the commission or attempted commission of a crime of violence**, as defined in subsection (d) hereof, then such person shall be fined $25,000 and imprisoned not less than fifteen (15) years nor more than twenty (20) years. The foregoing applicable

penalties provided for violation of this section shall be **in addition to the penalty** provided for the commission of, or attempt to commit, the felony or crime of violence.

\*\*\*

(d) As used in this chapter—
   (1) "Crime of violence" shall have the same definition as that contained in Title 23, section 451(g) of this Code."[6]
   14 V.I.C. § 2253.

Title 23, section 451(g) states that a "crime of violence" means the crime of, or the attempt to commit, murder in any degree, voluntary manslaughter, rape, arson, discharging or aiming firearms, mayhem, kidnapping, assault in the first degree, assault in the second degree, assault in the third degree, robbery, burglary, unlawful entry, or larceny. 23 V.I.C. § 451.

¶13. The latter portion of section 2253(a) regarding a crime of violence is structured as a sentencing enhancement and attaches to the underlying offense in a separate charge. *Hodge* at 198 (2017). In effect, the latter portion of section 2253(a) cannot stand alone and must be associated with an underlying violent offense. Because § 2253(a) serves as an enhancement to each underlying charge and each crime of violence varies in punishment, it stands to reason that the enhancement is applicable to each respective underlying charge. Use of a firearm only enhances the underlying sentence and cannot serve as the basis for another prosecution for a firearm possession offense under section 2253(a). *United States v. Xavier*, 2 F.3d 1281, 1291 (3d Cir. 1993) ("[Section 2253] provides punishment for use or possession 'except that' a greater punishment applies for a defendant convicted of possessing a weapon during a crime of violence."); *see also United States v. Fontaine*, 697 F.3d 221 at 229 ("It is thus the lack of authorization to have a firearm that stands as a prerequisite to criminal liability [under section 2253(a)]."). Also, section 2253(a) unequivocally provides in the last

---

[6] 14 V.I.C. § 2253(a), (d).

sentence that the punishment imposed is in addition to the sentence imposed for the underlying charge. Hence, the Virgin Islands Legislature intended this charge to be separate and apart, and in addition to each and any of the specified crimes of violence under § 451(g).

## III. LEGAL DISCUSSION

¶14. In his motion, Cozier relies heavily upon *Connor v. People*, 59 V.I. 286, 310 (V.I. 2013) (citing *Blockburger* which states that multiplicity occurs where "...criminal charges have identical statutory elements, or <u>one is a lesser included offense of the other</u>...". Cozier applies this standard to his case and asserts that the People improperly charged him with eleven excessive counts in the Information under § 2253(a) because each count shares identical elements, to wit: (1) defendant possessed a firearm; and (2) during the commission or attempted commission of a crime of violence. Next, Cozier argues that the People exceeded "the limits set by the legislature's constitutionally valid definition of chargeable offenses"[7] because they linked § 2253(a) to every underlying crime of violence charged in the Information. Cozier rationalizes his argument using the standard set forth in *People v. Colon*, 60 V.I. 149, 163 (2014) by arguing that the use of the indefinite article "a" under § 2253(a) in "a crime of violence" should be interpreted as a single charge because the legislature of the Virgin Islands did not intend for there to be "separate units of prosecution" for each of the pertinent crimes of violence alleged in a single case. Quoting *Colon*, he further argues that "if the legislature wants to refer to something particular, not general, it uses the word "the" rather than "a" or "an". *Id.* Additionally, Cozier argues that the "Legislature's use of disjunctive conjunction "or" at the end of the definition of "a crime of violence" supports the legislative intent to include various types of crimes of violence." *Id.*

---

[7] Defendant's Motion to Dismiss, p. 5.

¶15.    Cozier concludes that irrespective of whether it was murder, attempted murder, assault, or any other type of crime of violence, if there was one possession of a firearm that arose from a single act, it violates the Double Jeopardy Clause of the Fifth Amendment. Cozier also draws this inference from *People v. Pringle*, No. ST-2020-CR-00262, 2021 V.I. Super. 94U, which provided that "it is multiplicitous to charge someone for possession of the same weapon multiple times for multiple underlying crimes when the same weapon is used, and the crimes are a part of the same ongoing criminal activity."

¶16.    In response, the People contend that the charges are each linked to a specific predicate crime of violence with distinct elements that need to be established. They argue that the Virgin Islands Legislature intended for a defendant who uses a weapon, whether it is a gun or other dangerous weapon, during the commission of a crime of violence, face two charges – one for the underlying crime of violence and another for the use of the weapon. The People further assert that there were two firearms used during the commission of the underlying felonies.[8] "How the weapons were used or carried pursuant to 14 V.I.C. § 2253(a) is different and specifically linked to the crime of violence it was used in the commission of." *Id*. The People also argue the supporting facts to prove use of the firearm is distinct from each charge. In addition to that, the People assert that each of the underlying crimes of violence require separate distinct elements to prove. *Id*.

¶17.    Finally, the People admitted that although there is a constitutional prohibition against cumulative punishment under the Double Jeopardy Clause, there is no prohibition from being charged in multiple ways. *Id* at ¶ 8. Hence, there is no legal justification for narrowing prosecutorial discretion in charging in a manner inconsistent with the legislative intent or pursuits of justice. The Court

---

[8] People's Opposition to Defendant's Motion to Dismiss, p. 5 ¶ 9.

agrees with the People in some respects. Thus, some charges are multiplicitous and others are not.

## A. Counts Two, Four, and Six are multiplicitous and consolidation of them is appropriate.

¶18. Analyzing counts two (2), four (4), and six (6) (use of a firearm during the commission of the underlying crimes of violence – murder and assault), this Court finds them multiplicitous because they stem from one act of discharging projectiles in a single shooting incident. Each count of use of a firearm is paired with felony murder, assault in the first degree and assault in the third degree. The underlying crimes of violence charged in counts one, three, and five arise from the killing of Gregorianna Julien, as a result, the assault charges addressed in counts three and five are subsumed into the murder charge contained in count one. For the reasons elucidated below, it is in interest of justice to consolidate them into one count.

### i. Underlying crimes of violence and their relation to the respective gun charges.

¶19. Since a homicide generally results from the commission of an assault, every felonious assault ending in death automatically would be elevated to murder in the event a felonious assault could serve as the predicate felony for purposes of the felony-murder doctrine. *Government of the Virgin Islands v. Vergile*, 50 V.I. 127, 139 (2008). Felony murder is defined in 14 V.I.C. § 922(a)(2), which provides:

> "All murder which…is committed in the perpetration or attempt to perpetrate arson, burglary, kidnapping, rape, robbery or mayhem, assault in the first degree, assault in the second degree, assault in the third degree and larceny…is murder in the first degree."

With respect to assault in the first degree, 14 V.I.C. § 295(3) provides in the pertinent part:

> "Whoever-
> (3) with intent to commit rape, sodomy, mayhem, robbery or larceny, assaults another;"

Assault in the third degree is defined in 14 V.I.C. § 297(a)(1)(2)(4), which provides in its pertinent

parts:

> "(a) Whoever, under circumstances not amounting to an assault in the first or second
> degree -
> (1) assaults another person with intent to commit a felony;
> (2) assaults another with a deadly weapon;
> (4) assaults another and inflicts serious bodily injury upon the person assaulted; or
> whoever under any circumstances;" ...

¶20. Some elements of 14 V.I.C. § 297(a)(2) differ from the elements of § 295 as they are mutually

exclusive of each other, hence, it is important to clarify the relationship between the two sections.

The language in 14 V.I.C. § 297(a) provides for "circumstances not amounting to an assault in the

first or second degree". However, as addressed in *Davis v. People*, 69 V.I. 619, 632-33 (V.I. 2018),

the language "under circumstances not amounting to an assault in the first or second degree" does not

establish an additional element of the offense, but rather constitutes a condition precedent to the

sentencing range prescribed in section 297. *Nibbs v. People*, 73 V.I. 617, 622, 2020 V.I. 18, at 12.

Moreover, § 297(a)(1) is effectively the same as § 295(3) except that § 295(3) is inclusive of all

felonies whereas section 297 specifies five categories of felonies. Consequently, § 297 is not subject

to the *Blockburger* analysis with respect to comparable section 295(3). Therefore, 14 V.I.C. § 297(a)

shall be considered in tandem with assault in the first-degree.

¶21. Here, Cozier is charged with felony murder in count one of the Information. When utilizing

the *Blockburger* test, elements of both assault charges overlap with the elements of the murder charge.

The core distinction between the assault under § 297(a)(1)(2) and (4), § 295(3), and § 922 is that,

ultimately, the person died. Thus, the People do not have to prove additional elements in assault

charges beyond those required to prove under murder. They just need to prove the assault charges

resulted in the death of the person. Since the assault charges fall under the umbrella of the murder

charge, the respective firearm charges are lesser-included offenses of the firearm charge associated with murder. Therefore, counts four and six are both lesser-included offenses of count two, in that the People are not required to prove any additional element to obtain convictions for counts four and six that are not required to obtain a conviction under count two. Consequently, the *Blockburger* test is satisfied.

¶22. Cozier allegedly possessed a handgun as a co-defendant carried a long gun when they entered the store. The People allege that when Cozier and the other co-defendants exited the jewelry store and ran to the Honda Odyssey van, the accomplice with the long gun allegedly discharged multiple rounds of firearm ammunition into the store. One of the bullets struck Gregorianna Julien in her shoulder causing her death. Therefore, the resulting death is a direct consequence of the serious bodily injury that was caused by the felonious assault.

### ii. Prosecutorial discretion with respect to application of 14 V.I.C. § 2253(a).

¶23. As this Court noted above, Defendant is arguing that the People exceeded their prosecutorial charging discretion when they charged him with eleven counts of 14 V.I.C. § 2253(a). This Court disagrees. The Third Circuit concluded that prosecutors enjoy a great amount of discretion in charging a defendant. *United States v. Pungitore*, 910 F.2d 1084, 1112 (3d Cir. 1990). As other courts have pointed out, "prosecutors have traditionally enjoyed discretion in deciding which of multiple charges against a defendant are to be prosecuted or whether they are all to be prosecuted at the same time." *Id* (citing *United States v. Cardall*, 885 F.2d 656, 666 (10th Cir. 1989); *see also United States v. Becker*, 892 F.2d 265, 269 (3d Cir. 1989) (successive prosecutions of two separate drug conspiracies did not constitute harassment); *United States v. Partyka*, 561 F.2d 118, 124 (8th Cir. 1977), cert. denied, 434 U.S. 1037, 98 S.Ct. 773, 54 L.Ed.2d 785 (1978).

¶24.    Defendant's reasoning for supplanting the word "the" for the word "a" within "a crime of violence" is implausible because it misinterprets the legislative intent behind 14 V.I.C. § 2253(a). The indefinite articles of "a" or "an" are a reference to any of the fourteen specific crimes of violence named in Title 23, section 451(g) of the V.I. Code that the government may choose from when it exercises its prosecutorial discretion. Title 23, section 451(g) of the V.I. Code provides:

> "'Crime of violence means the crime of, or the attempt to commit, murder in any degree, voluntary manslaughter, rape, arson, discharging or aiming firearms, mayhem, kidnapping, assault in the first degree, assault in the second degree, assault in the third degree, robbery, burglary, unlawful entry or larceny."

A reading of § 2253(a) with Cozier's interpretation reads as follows:

> "[I]f such firearm or an imitation thereof was had, possessed, borne, transported or carried by or under the proximate control of such person during the commission or attempted commission of **the** crime of violence, as defined in subsection (d) hereof, then such person shall be...."

This interpretation implies that the legislature intended the government to charge only one count of a firearm as an enhancement charge despite any number of violent crimes charged. Choosing to follow Defendant's position in narrow application of the definite article "the" before "crime of violence" would result in substantial contradiction with the legislative intent and obstruct the very purpose of the section. Defendant's reading leads to an absurd result because it suggests the prosecutor lacks discretion and must select which underlying offense the firearm charge must be made applicable to. This perspective renders the interpretation of section 451(g) unsound. Each enhancement charge is specifically tied to a distinct crime of violence. As a result, following this restricted view would significantly limit prosecutorial charging discretion and undermine its role to prosecute crimes. Consequently, it is the not in interest of justice to limit the prosecutorial arm of the

14

government in fulfilling its role. Therefore, the People did not exceed their limits of prosecutorial discretion bestowed upon them by the statutes.

¶25.    Defendant's next argument is that the Virgin Islands Legislature intended to include various types of crimes of violence when it used the disjunctive conjunction "or" at the end of the definition of "a crime of violence" in section 451(g). This argument is meritless. The disjunctive conjunction "or" serves the purpose to conclude the number of limited violent crimes named in section 451(g) that the government may choose from when executing its prosecutorial discretion in charging a defendant with § 2253(a). Defendant's reasoning also contradicts the legislative intent anchored in § 104 that allows the People to prosecute a single act or omission that violates several different laws.

¶26.    In addition to the reasons stated above, this Court finds that Cozier misapplies § 104 during his argument with respect to multiplicity of charges under § 2253(a). As already stated above, section 104 provides in pertinent part:

> "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under any of such provisions, but in no case may it be punished under more than one. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

Hence, the plain language of section 104 explains that despite the fact that an individual can be charged and found guilty of violating multiple provisions of the Virgin Islands Code arising from a single act or omission, that individual can ultimately only be punished for one offense." *See Galloway* at 712; *see also Tyson* at 428.

¶27.    Defendant failed to recognize that 14 V.I.C. § 104 carries rather a permissive character with respect to multiple charging. Section 104 allows the government to impose multiple charges against a defendant as a part of their prosecutorial discretion, however, it forbids multiple punishments for the same act. In *Titre*, the Virgin Islands Supreme Court addressed the issue of sentencing in

15

compliance with § 104. The Court held the trial court's sentencing decision to the standard developed in *Rutledge v. United States*, 517 U.S. 292, 116 S. Ct. 1241, 134 L. Ed. 2d 419 (1996). "Pursuant to the *Rutledge* decision, the Superior Court was required to announce a sentence for only a single conviction of each group of offenses, and then to vacate—rather than merge or stay—the remaining offenses within that group." *Titre* at 807. Consequently, the Court concluded that the Superior Court should have imposed sentences for the underlying crime of violence (murder in the second degree) and its corresponding firearm charge under § 2253(a) and vacated the convictions for lesser included offenses (assault in the first degree and assault in the third degree) and their respective firearm charges under § 2253(a). *Id.* In its Opinion, the Court explained that its reasoning stems from an observation that other courts have exercised their supervisory powers to replace merger with vacatur as the remedy for violations of state double jeopardy protections. *Id* at 809 (citing *State v. Polanco*, 61 A.3d 1084, 1087 (Conn. 2013) ("[T]he vacatur approach shall replace the use of the merger of convictions approach when a defendant is convicted of greater and lesser included offenses.")). The Court concluded that vacatur shall be the remedy in cases in which section 104 is implicated, just as is the case with violations of the Fifth Amendment's Double Jeopardy Clause. *Id* at 809.

¶28.    Following the Virgin Islands Supreme Court's considerations with respect to sentencing in accord with 14 V.I.C. § 104, this Court recognizes the importance to abide by this rule at the sentencing stage. Given the early stage of the proceedings in this case, the People are not prohibited by the law to execute their charging discretion at this time.

¶29.    Lastly, Cozier argues that single use of a firearm cannot support multiple prosecutions under section 2253(a). This Court disagrees. In *United States v. Hodge*, 870 F. 3d 184, 188 (3d Cir. 2017), the Court of Appeals considered a defendant who shot a man holding a bag of cash, in an attempt to steal the bag. When the victim resisted, defendant shot him twice more. *Id.* He then shot the man's

companion and fled with the bag. *Id.* Defendant was charged, *inter alia*, with three counts under 18 U.S.C. § 924(c). Two were premised on the attempted murder of each of the two men, and one premised on the robbery. *Id.* The Defendant argued that 18 U.S.C. § 924(c) can be read to mean that single use, carrying, or possession of a firearm cannot support multiple prosecutions. *Id* at 196. Therefore, the predicate offenses – one for robbery and one for attempted murder – are both based on a single use of his firearm in shooting a man. *Id* at 196. In rejecting Hodge's contention, the Court stated as follows: "[c]rimes occurring as a part of the same underlying occurrence may constitute separate predicate offenses if properly charged as separate crimes. It follows that each may be a separate predicate for a section 924(c)(1) conviction." *Id* at 196 (quoting *United States v. Casiano*, 113, F.3D 420, 426 (3d Cir. 1997)) (citations omitted). The Court further opined that the statutory text of § 924(c) is "susceptible of differing interpretations" with the relevant unit of prosecution being either (1) the underlying predicate offense, or (2) each individual instance in which a defendant uses or carries a firearm throughout the duration of an underlying predicate offense. *Id* at 196-97.

¶30. In *Hodge*, the Court observed that Defendant engaged in multiple uses of a firearm to commit multiple crimes, albeit all during the same criminal episode. *Id* at 197. The Court's observation was not based on the way the firearm was employed but rather the fact that it was used to further several different crimes. Thus, the case at bar resonates with *Hodge* because Cozier is alleged to have employed a firearm multiple times to commit multiple predicate offenses during the incident.

### iii. Judicial economy, risk of prejudice, totality and severity of the charges.

¶31. Cozier relies on the reasoning of *Pringle, inter alia*, which provides that courts should consider factors such as "judicial economy, risk of prejudice, the totality of the charges against the defendant, and the severity of those charges" when addressing multiplicitous charges. This Court finds this argument unavailing. In *United States v. Bowers*, 495, F. 3d 362 (3d Cir. 2020), Defendant

contended that multiple counts charging violations of section 924(c) and (j) are multiplicitous in violation of the Eighth Amendment and the Federal Death Penalty Act. He asserted that the nature of charges against him may render a jury determination of punishment unreliable due to juror confusion and the risk of double counting both charges and aggravated circumstances. *Id.* In that vein, Defendant expressed concerns that jurors may be under the impression that just because there are multiple counts, the crime is worse and the Defendant more culpable. *Id.* The Court disagreed and opined that Defendant's concerns can be addressed through appropriate instructions to the jury and conscientious management of the trial and evidence presented. *Id.*

¶32. Returning to the present case, there is no reason for this Court to believe that a jury will be unwilling to properly carry out their jury duty. Therefore, Cozier is not at risk of unfair prejudice or jury confusion created by the multiple charges in the People's Information. It is in the interest of justice to allow the government to exercise its discretion in fulfilling its role as a prosecutorial body. As already stated above, limiting the People in their charging discretion will undermine the legislative intent behind § 104 that allows for acts or omissions to be "made punishable". Therefore, Cozier's concerns do not outweigh interests of justice and public concerns.

iv. **Aiding and Abetting with respect to multiple charges for use of a firearm.**

¶33. Defendant argues that although there were two victims, it was only one possession of a firearm during the commission of the alleged crimes of violence, thus, it is multiplicitous to charge him with multiple counts for the same possession. He draws parallels from the Virgin Islands Supreme Court decision in *Tyson.* In *Tyson,* the Court held that the trial court failed to comply with § 104 when it imposed separate sentences for two counts of use of a firearm under § 2253 for two different murders. The Court reasoned that the crime of possession under the facts was a single act because Tyson

18

possessed the same firearm throughout the duration of the shooting incident.[9] In conclusion, the Court held that it is multiplicitous to charge someone for possession of the same weapon multiple times for multiple underlying crimes when the same weapon is used, and the crimes are a part of the same ongoing criminal activity.

¶34.    This case resonates with *Tyson* because it involves use of one firearm during criminal acts that resulted in the death of one person and physical injury of another. However, Tyson acted as a sole perpetrator whereas Cozier acted with confederates who, allegedly, possessed two different firearms amongst them. Cozier is charged with aiding and abetting under each offense. The Supreme Court of the Virgin Islands has held that "in order to establish the offense of aiding and abetting, the Government must prove ... that the substantive crime has been committed and that the defendant knew of the crime and attempted to facilitate it." *Brown v. People*, 54 V.I. 496, 505 (V.I. 2010) (quoting *United States v. Frorup*, 963 F.2d 41, 43 (3d Cir. 1992)). Additionally, the Court requires proof that the defendant had the specific intent to facilitate the crime. *Id; United States v. Mercado*, 610 F. 3d 841, 846 (3d Cir. 2010); *see also Merrifield v. People of the Virgin Islands*, 56 V.I. 769, 775 (2012).

¶35.    Here, there were two firearms used. The police collected approximately twenty spent castings from two different caliber firearms. Following the reasoning of the cases outlined above, the *Tyson* reasoning does not exculpate Cozier simply because he allegedly possessed one weapon. The presence and alleged participation of three other co-conspirators who had another gun in their possession extend to Cozier. Unlike *Tyson*, where defendant was charged with multiple firearm charges in perpetration of felony murder that stemmed from a single act of shooting, Cozier is alleged to have committed separate acts of criminal conduct that laid foundation for separate prosecutorial

---

[9] *Tyson v. People*, 59 V.I. 391, at 428 (2013);

units of distinct crimes of violence with their own unique elements. Therefore, since Cozier allegedly partook in a series of different acts that resulted in murder, robbery, grand larceny and other crimes named in the Information, the *Tyson* reasoning that targets only one criminal conduct would not apply here.

¶36. Summarizing the discussion above, this Court finds that under the *Blockburger* test, the charges for use of a firearm during the commission of a crime of violence must stay within one prosecutorial unit of the underlying crime of violence and its lesser included offenses. In other words, since assault in the first-degree and assault in the third-degree charges are lesser included offenses of murder in the first degree under the *Blockburger* test, it is reasonable to view these three charges as one prosecutorial unit. Accordingly, the respective charges for use of a firearm are within one prosecutorial unit of the underlying charges and must be consolidated into one count.

### B. Counts Eight, Ten, and Twelve are multiplicitous and consolidation of them is appropriate.

¶37. With respect to counts eight (8), ten (10), and twelve (12) (each charging use of a firearm during the commission of the underlying crimes of violence – attempted murder and assault), the same reasoning applies to the attempted murder of the security officer. All three counts charge Cozier with use of a firearm in furtherance of the underlying crimes of attempted murder in the first degree, assault in the first degree and assault in the third degree that are charged in counts seven, nine, and eleven, respectively. For the reasons articulated below, it is appropriate to consolidate counts eight, ten, and twelve into one count.

¶38. In *Connor*, the Virgin Islands Supreme Court rejected the defense's arguments that the assault with a deadly weapon charge under § 297 is the same as § 2251(a)(2)(B), the enhancement charge. The Court rejected that argument based on the rationale that an assault committed "with a deadly

weapon" constitutes the offense of assault in the third degree, and because it is a crime of violence, it is also one of the crimes for which the possessor of a firearm may be convicted under § 2251(a)(2)(B). The Supreme Court followed the Third Circuit's reasoning that provides: "because the Legislature was punishing the corresponding crime of possession of a deadly weapon during the commission of the crime of violence, along with the primary offense of committing the crime of violence itself, its intention to punish two offenses from the same act was clear." *Id* at Fn. 3 (*citing Government of Virgin Islands v. Soto*, 718 F.2d 72, 78 (3d Cir. 1983)). Under *Fontaine v. People of the V.I.*, 62 V.I. 643, 654 (2015), the same legislative intent exists for § 2253. The Court held that the charge for unauthorized possession of a firearm and the underlying crime of violence are "not multiplicitous because the legislature clearly intended for additional sentencing where unauthorized firearms are involved." *Id*. Compared to § 2251, § 2253(a) more narrowly proscribes unlawful possession of a firearm during the commission of a crime of violence. *Virgin Islands v. Commissiong*, 706 F. Supp. 1172, 1989 (D.V.I. 1989).

¶39.    Similar to first degree murder, an assault is a lesser included offense of an attempted murder in the first degree. Attempted murder in the first degree is defined in 14 V.I.C. § 922(a)(2) and § 331(1). Section 331(1) provides:

> "Whoever unsuccessfully attempts to commit an offense, shall, unless otherwise specially prescribed by this Code or other law, be punished by -
> (1) imprisonment for not more than 25 years, if the offense attempted is punishable by imprisonment for life; or ...."

Cozier is charged with attempted murder in the first degree in count seven of the Information and with assault in the first degree and assault in the third degree in counts nine and eleven, respectively. Since an assault is a lesser included offense of attempted murder, the People do not have

to prove additional elements in assault charges beyond those required to prove under attempted murder in the first degree. Furthermore, because the assault charges fall within an attempted murder charge, the respective firearm charges are lesser-included offenses of the identical charge associated with the attempted murder. Therefore, counts ten and twelve are both lesser included offenses to count eight, in that the People are not required to prove any additional elements to obtain convictions for counts ten and twelve that are not required to obtain a conviction under count eight. The firearm charges in counts eight, ten, and twelve are similar to counts two, four, and six, consequently, the *Blockburger* test is satisfied. Therefore, consolidation is appropriate.

## C. Count Fourteen stands alone as a single charge to Count Thirteen.

¶40. With respect to count fourteen (14) (kidnapping), Cozier seeks to dismiss or consolidate this charge into a single charge for all the underlying crimes of violence charged. The kidnapping charge arises from the defendant(s) forcing Gregorianna Julien back into the jewelry store by pulling her back against her will prior to the robbery and shooting incidents. For the reasons set forth below, this Court finds that the kidnapping charge should stand in isolation from other underlying offenses because kidnapping is a distinct charge and is not a lesser included offense of any of the underlying offenses charged.

¶41. 14 V.I.C. § 1052(a) reads as follows:

> "Any person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains, such individual for ransom, reward or to commit extortion or to exact from any person or entity any money or valuable thing, or any person who kidnaps or carries away any individual to commit robbery, or any person who aids or abets any such act, is guilty of kidnapping for ransom and shall be imprisoned for life."

The People must prove completely different elements in the kidnapping charge that are substantially distinct from those required to prove under murder or attempted murder. Kidnapping is not a lesser included offense of murder, therefore, it comes with a separate prosecutorial classification from murder and remains in exclusive association with count thirteen. Therefore, since the kidnaping charge is an independent offense with its own characteristic elements that require a different analysis, this Court will not consolidate its corresponding firearm charge with the identical charges associated with the other crimes of violence alleged in the Information that are distinct from the kidnapping charge. The People are within their prosecutorial discretion to charge this count separately in one prosecutorial unit as neither judicial economy nor concerns of prejudice and justice demand its dismissal at this stage. Consequently, the *Blockburger* test is inapplicable here because all elements of the crime are different.

### D. Counts Sixteen, Eighteen, Twenty, and Twenty-Two are not multiplicitous.

¶42. As it pertains to counts sixteen (16), eighteen (18), twenty (20), and twenty-two (22), Cozier also seeks to consolidate these charges into a single charge with the prior counts. To determine whether the respective counts must be consolidated or dismissed, this Court analyzed each underlying offense separately and finds that counts 16, 18, 20, and 22 are not multiplicitous. Count sixteen is linked to the underlying crime of robbery in the first degree, count eighteen is linked to the underlying crime of robbery in the second degree, count twenty is attached to the underlying crime of unlawful entry, and count twenty-two is attached to the underlying crime of grand larceny.

¶43. Robbery in the first degree is defined in 14 V.I.C. § 1862 which provides:

> "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another perpetrator of the crime:
> (1) Causes physical injury which is incapacitating in any way to any person who is not a perpetrator of the crime; or

(2) Displays, uses or threatens the use of a dangerous weapon."

Robbery in the second degree is defined in 14 V.I.C. § 1863 which provides in the pertinent part:

"A person is guilty of robbery in the second degree when he forcibly steals property and when:
(1) He is aided by another person actually present; or
(2) In the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime causes physical injury to any person who is not a participant in the crime."

The crime of unlawful entry is defined under 14 V.I.C. § 445 that provides:

"Whoever, under circumstances or in a manner not amounting to burglary, enters a building or any part thereof, with intent to commit an offense, shall be imprisoned not more than 1 year."

Finally, grand larceny is defined in 14 V.I.C. § 1083(a)(1):

"(a) Whoever takes property-
(1) which is of $500 or more in value
...commits grand larceny and shall be imprisoned for not more than 10 years."

¶44. Applying the *Blockburger* test, the charge of robbery in the first degree has its own unique elements from robbery in the second degree. Namely, the elements of this crime as charged, require that the People prove that Cozier *or* another perpetrator *incapacitated* their victim by physically injuring another person or, in the alternative, displayed, used, or threatened the use of a dangerous weapon. On the other hand, the charge of robbery in the second degree requires that the People establish that a perpetrator *forcibly steals* property *and* that he is aided by another person actually present or, in the alternative, that Cozier or another perpetrator, during the crime or during flight therefrom, caused physical injury to any person who is not a participant in the crime. All the elements of robbery in the first degree are completely different from the elements of robbery in the second degree. Robbery in the first degree requires an additional element of physical incapacitation resulting

from physical injury or, in the alternative, display, use, or threats with a firearm. These are different from elements from forceable stealing with the help of another person actually present or, in the alternative, causing a physical injury to a victim that does not rise to the level of physical incapacitation. Thus, elements of both robbery in the first and in the second degree do not overlap as robbery in the second degree is not a lesser included offense of robbery in the first degree. Therefore, the People would have to prove two separate offenses. Consequently, both counts of use of a firearm that are attached to the underlying crimes of robbery in the first degree and robbery in the second degree serve as their enhancement. Accordingly, the charges must remain.

¶45.     The elements of unlawful entry require that a defendant enters a building with intent to commit an offense. These elements are distinct from those that the People must prove under any of the other underlying charges, including robbery. In other words, one does not have to unlawfully enter premises in order to rob another person. The crime of unlawful entry is predicated on lack of permission to enter the premises of another or any part thereof while having the intent to commit a crime. As a result, the People would have to prove that Cozier lacked permission from the store operator to enter the premises and committed a felony. Considering the analysis above, elements of unlawful entry do not merge into any of the underlying offenses. Therefore, the respective count of use of a firearm during the commission of unlawful entry should remain in place as an enhancement, as intended by the Virgin Islands Legislature.

¶46.     The elements of grand larceny require that a defendant unlawfully takes property in an amount of $500 or more. The elements of grand larceny are distinct from those that the People must prove under any of the underlying charges discussed above. For instance, grand larceny elements do not imply the use of force and/or violence to deprive someone of their property. When charging a suspect with the crime of grand larceny, the People are required to establish that the suspect "took" property

25

in an amount of $500 or more. The elements of this crime are distinct from those charged under 14 V.I.C. §§ 1862, 1863. Therefore, the charge of use of a firearm should remain as an enhancement to the underlying crime of grand larceny.

¶47. Considering the analysis above, the *Blockburger* test is inapplicable here because all elements of the crimes listed are different from each other. Consequently, count sixteen, eighteen, twenty, and twenty-two remain in an exclusive relationship with their respective underlying crimes of violence named in counts fifteen, seventeen, nineteen, and twenty-one as individual units of prosecution. Therefore, since robbery in the first degree, robbery in the second degree, unlawful entry, and grand larceny charges are all independent offenses with their own unique elements that require separate analysis, the Court will not consolidate their corresponding charges for use of a firearm into one charge. For the reasons stated above, the People are within their prosecutorial discretion to charge counts sixteen, eighteen, twenty, and twenty-two as enhancements and separately as neither judicial economy nor concerns of prejudice and justice warrant their dismissal at this stage.

**E. Distinction between "multiplicity of charges" and "multiplicity of sentences".**

¶48. This Court recognizes that Defendant is concerned about potential risks of prejudice or confusion of jury instructions that may be caused by multiple charging. However, strong consideration is given to the Court's interpretation of the legislative intent behind section 104 that allows for multiple charging of criminal conduct as means of prosecutorial charging discretion. Defendant's concern, therefore, lacks merit because multiple charging does not imply multiple sentencing or punishments. While the Double Jeopardy Clause "protects criminal defendants against multiple prosecutions or punishments for a single offense," section 104 "speaks to multiple punishments for the same act." *Castillo v. People*, 59 V.I. 240, 284 n.1 (2013) (Hodge, C.J., concurring). Section 104 thus "provides greater protections than the Double Jeopardy Clause" and

"dictates that despite the fact that an individual can be charged and found guilty of violating multiple provisions of the Virgin Islands Code arising from a single act or omission, that individual can ultimately be punished for only one offense." *Estick v. People*, 62 V.I. 604, 620-21 (2015); *Williams* at 821 n.9 (2012); *Hodge*, 870 at 199 (2017). The purpose of the constitutional protection against duplicative punishment is "to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." *See United States v. Kennedy*, 682 F.3d 244, 255 (3d Cir. 2012) (citing *Ohio v. Johnson*, 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984)). In other words, "multiple charging" is not identical to "multiple sentencing" because the consequence of "multiple charging" does not ultimately result in multiple punishments and violations of the Fifth Amendment as a result. This Court views "multiple charging" as one of the means given to the government within the spectrum of their prosecutorial discretion. Therefore, it is within prosecutorial discretion to charge a defendant with multiple counts in the Information as long as the government performs within the framework of the legislative intent behind a charge in question and while balancing constitutional considerations.

## IV.    CONCLUSION

¶49.    For the reasons elucidated above, this Court finds that it is in the interest of justice to consolidate charges of use of a firearm during the commission of a crime of violence into one count of the prosecutorial unit that charges the crime of felony murder. Therefore, counts four and six shall be consolidated into count two. The same reasoning applies to attempted murder, therefore, counts ten and twelve shall be consolidated into count eight as a part of the prosecutorial unit that charges the crime of attempted murder. Since the remaining counts of the use of a firearm for the underlying crimes of kidnapping, robbery in the first degree, robbery in the second degree, unlawful entry and

grand larceny are distinct crimes with distinct elements, it is proper for their respective firearm

charges to remain. Hence, counts fourteen, sixteen, eighteen, twenty, and twenty-two shall remain as

charged in the Information. An appropriate order of even date follows.

Dated: November 10, 2022

**Renée Gombs Carty**
Judge of the Superior Court
of the Virgin Islands

**ATTEST:**
Tamara Charles
Clerk of the Court

By:

Latoya Camacho
Court Clerk Supervisor 11 / 10 / 2022

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

PEOPLE OF THE VIRGIN ISLANDS,           )
                                        )
               Plaintiff,               )
                                        )
       v.                               )       CASE NO. ST-21-CR-380
                                        )
MICAIAH COZIER,                         )
                                        )
               Defendant.               )       Cite as: 2022 V.I. Super 94U
                                        )
_____)

## ORDER

**THIS MATTER** is before the Court upon the "Motion to Dismiss" filed on March 22, 2022, by Defendant Micaiah Cozier ("Defendant"). Defendant moves this Court to dismiss eleven counts: two (2), four (4), six (6), eight (8), ten (10), twelve (12), fourteen (14), sixteen (16), eighteen (18), twenty (20), and twenty-two (22) or in the alternative, to consolidate the counts into one charge. The People of the Virgin Islands ("the People") filed their Opposition on March 29, 2022. Consistent with the Memorandum Opinion of even date, it is hereby

**ORDERED** that Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Counts 4 and 6 are **CONSOLIDATED** into count 2; and it is further

**ORDERED** that Counts 10 and 12 are **CONSOLIDATED** into count 8; and it is further

**ORDERED** that firearm charges under Counts 14, 16, 18, 20, and 22 shall remain; and it is further

**ORDERED** that within one week of the date of entry of this Order the People **SHALL** file the First Amended Information consolidating the respective counts and the same shall be done for the other three co-defendants; and it is further

**ORDERED** that copies of the Memorandum Opinion and this Order shall be directed to

Assistant Attorney General Anna B. Scott, Esquire, Nicole-Lynn King-Richardson, Esquire, Carl

R. Williams, Esquire, David J. Cattie, Esquire, and Marital A. Webster, Sr., Esquire.

Dated: November ___, 2022

**Renée Gumbs Carty**  
Judge of the Superior Court  
of the Virgin Islands

**ATTEST:**  
Tamara Charles  
Clerk of the Court

By: _____  
Latoya Camacho  
Court Clerk Supervisor _____